IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MONICA P.,[1] | No. 6:19-cv-1002-MO |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

MOSMAN, District Judge:

This matter comes before me on Plaintiff Monica P.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On October 12, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging disability beginning April 30, 2016. Tr. 290. The Social Security Administration ("SSA") denied her claim initially and upon reconsideration. Tr. 131, 147. Plaintiff appeared and testified at a hearing held on August 21, 2018, before Administrative Law Judge (ALJ) Steven A. De Monbreum. Tr. 43. Plaintiff had a supplemental hearing before the same ALJ on January 10, 2019. Tr. 18-40. On March 11, 2019, the ALJ issued a decision finding that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the decision. Tr. 12. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2016, the alleged onset date. Tr. 17. At step two, the ALJ determined that Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome (CTS); peripheral neuropathy; degenerative disc/joint disease; obstructive sleep apnea; depressive disorder; unspecified personality disorder; and somatic symptom disorder. Tr. 17. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> [She can] perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally push or pull with the upper extremities bilaterally. Further, she can occasionally climb ramps/stairs, but never ladders/ropes/scaffolds. She can frequently kneel, crouch, and crawl. She can frequently handle and finger bilaterally. She should have no exposure to loud noises and no exposure to hazards, such as dangerous machinery and unprotected heights. She can have occasional interaction with the public, coworkers, and supervisors in a static work environment with few changes in work routines and settings.

Tr. 19-20.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as electronics worker, garment sorter, and marker. Tr. 26. The ALJ therefore found Plaintiff not disabled. Tr. 26.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises one issue with the ALJ's decision. She contends that the ALJ improperly rejected the opinions of examining psychiatrists Dr. Paula Belcher, Ph. D., and Dr. Scott Alvord. Psy. D.

### I.    Medical Opinion Evidence

An ALJ must consider, evaluate, and explain the weight he gave the opinions of medical professionals who saw the claimant or reviewed her records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (d) & (e); SSR 6-03p, available at 2006 WL 2329939. For claims filed before March 17, 2017, the Ninth Circuit distinguishes between the opinions of three

types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). At a slightly lower threshold, an ALJ can reject an examining physician's report that is contradicted by the opinion of another physician for "specific, legitimate reasons." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If there is a conflict between medical opinions, the ALJ must provide a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040. Internal inconsistencies between a doctor's opinion and her clinical notes are likewise "a clear and convincing reason for not relying on the doctor's opinion[.]" *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

*A. Medical Opinions*

Dr. Paula Belcher performed a psychological assessment, mental status exam and a diagnostic interview of Plaintiff on August 28, 2018. Tr.1571. Dr. Belcher diagnosed "depressive Disorder Due to Chronic Pain, With Anxious Distress;" "Features of unspecified personality disorder;" and "R/O [rule out] Somatic Symptom Disorder." Tr.1576. Dr. Belcher assessed "moderate" limits in Plaintiff's ability to make judgments on complex work-related decisions

and in interacting with the public, supervisors, and coworkers. Tr.1577-78. Dr. Belcher assessed "marked" limitations in Plaintiff's ability to respond appropriately to usual work situations and to changes in a routine worksetting. Tr. 1578.

Dr. Alvord evaluated Plaintiff on November 14, 2018. Tr. 1617. Dr. Alvord's assessment was based on a clinical interview, mental status examination, and review of medical records from the October 12, 2016 through May 10, 2017. Tr. 1617. Dr. Alvord concluded that Plaintiff met the diagnostic criteria for a Somatic Symptom Disorder. Tr.1620. He wrote, "I suspect psychiatric distress is contributing to regional pain symptoms fibromyalgia symptoms, etc." Tr. 1620. Using the same form as Dr. Belcher, Dr. Alvord assessed Plaintiff with four "marked" limitations in the area of social and adaptive functioning. Tr. 1622. Dr. Alvord opined that Plaintiff was markedly limited in her ability to interact with the public, with supervisors, and with coworkers. Tr.1622. Further, like Dr. Belcher, Dr. Alvord assessed Plaintiff with "marked" limitation in the ability to respond appropriately to usual work situations and to changes in a routine work setting. Tr.1622. Dr. Alvord also opined that Plaintiff would miss three or four days of work per month and be off task ten percent of a workday. Tr.1624.

The ALJ considered both doctors' opinions, and adopted them in part. Tr. 24. The ALJ gave great weight to Dr. Belcher's "mild" cognitive limits, and rejected Dr. Belcher's moderate restriction on complex work. Tr. 24. The ALJ also rejected Dr. Belcher's "marked" limit in Plaintiff's ability to respond appropriately to usual work situations and changes in a routine work setting. Tr. 24. The ALJ explained that Dr. Belcher observed that some of Plaintiff's slow behavior appeared to be intentional, and that Plaintiff appeared to exaggerate her pain to a "significant degree." Tr. 24 (citing Tr. 1575). Ultimately, the ALJ rejected these portions of Dr. Belcher's opinion because they were inconsistent with her own examination observations and notes, and with other evidence in the record. Tr. 24 (citing Tr. 1517-80).

5 – OPINION & ORDER

The ALJ gave great weight to Dr. Alvord's opinion that Plaintiff's impairments did not impact her cognitive functioning, but rejected all of Dr. Alvord's assessed limitations. Tr. 24. The ALJ found that Dr. Alvord's marked limits were inconsistent with the doctor's contemporaneous observations and testing. Tr. 24. The ALJ specifically called out Dr. Alvord's notations of Plaintiff's "mild" tearfulness, intact thought process, normal speech, and full orientation. Tr. 24. Further, the ALJ rejected Dr. Alvord's opinion that Plaintiff would miss work as "merely speculation." Tr. 24. The ALJ found that considering the inconsistencies of record, claimant's admissions of starting a massage business, looking for employment, and evidence of suggested exaggeration, the ALJ found no further restrictions established. Tr. 24.

*B. Substantial Evidence*

The ALJ adequately supported his rejection of Dr. Alvord's and Dr. Belcher's opinions with substantial evidence because both opinions were internally inconsistent. As noted above, internal inconsistencies are a sufficient reason for an ALJ to find an examining physician's opinion unpersuasive. *Bayliss*, 427 F.3d 1216; *see also Montavono v. Berryhill*, 2018 WL 1069464, at *7 (D. Or. Feb. 26, 2018) (finding discrepancy between objective examination findings and doctor's conclusion a "clear and convincing reason" to discount the medical opinion). Regarding Dr. Belcher, the ALJ emphasized the difference between her notes about Plaintiff's August 2018 consultative mental evaluation and her ultimate conclusions. Tr. 24. For example, Dr. Belcher found Plaintiff to be "intentionally exaggerating her pain, as if to demonstrate it was too severe to think or speak," and that "[s]he reported her mood as 'anxious,' although she did not present as anxious." Tr. 1571-72. Likewise, Dr. Belcher noted that "[t]his client reports chronic pain, but she appears to exaggerate her pain to a significant degree." Tr. 1572. The ALJ reasonably concluded that Dr. Belcher's observations of Plaintiff's exaggerations

conflicted with her ultimate conclusion that Plaintiff had moderate and marked limitations in complex work, ability to adapt and social skills. Tr. 24 (citing Tr. 1517-80). Similarly, concerning Dr. Alvord, the ALJ explained that his opinion of marked limitations was "inconsistent with the psychologist's contemporaneous observations and testing." Tr. 24. The ALJ reasonably contrasted Dr. Alvord's positive notations from Plaintiff's November 2018 exam with his ultimate opinion that Plaintiff was markedly limited. Tr. 24 (citing Tr. 1619). Ultimately, for both medical opinions the ALJ identified substantial internal inconsistencies, which was a clear and convincing reason—supported by substantial evidence—for discounting them.

      The ALJ also reasonably relied on the fact that Plaintiff exaggerated her symptoms testimony when discounting Doctors Belcher and Alvord's medical opinions. An ALJ may reject an examining physician's opinion if that opinion is premised on a claimant's subjective complaints, which the ALJ had properly discredited. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, the ALJ discredited portions of Plaintiff's subjective symptom testimony as exaggerated, which Plaintiff does not challenge. Tr. 20-21. Dr. Belcher's own clinical notes likewise found Plaintiff "appears to exaggerate her pain to a significant degree." Tr. 1575. Since both Dr. Belcher and Dr. Alvord based their opinions in part on Plaintiff's self-reports of pain and mental health issues, and the ALJ properly discounted those self-reports, it was reasonable for the ALJ to find the resulting medical opinions less persuasive in light of the unreliability of Plaintiff's testimony. Tr. 1575. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ therefore also reasonably relied on the evidence that Plaintiff exaggerated her symptoms when giving less weight to Dr. Belcher and Dr. Alvord's medical opinions.

**CONCLUSION**

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED:_____10/19/2023_____.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge

8 – OPINION & ORDER